UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD CHILDS,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:11-cv-817
Dlott, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's Memorandum in Opposition (Doc. 13), and plaintiff's reply memorandum (Doc. 16).

**I. Procedural Background**

Plaintiff filed an application for SSI in May 2007, alleging disability since January 31, 2006, due to insulin-dependent diabetes mellitus, left shoulder pain status post rotator cuff surgery, foot pain, back pain, post traumatic stress disorder, major depression, and coronary artery disease. (Tr. 130-32). Plaintiff's application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a de novo hearing before Administrative Law Judge (ALJ) Deborah Smith. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On December 1, 2009, the ALJ issued a decision denying plaintiff's SSI application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] has not engaged in substantial gainful activity since May 16, 2007, the application date (20 CFR 416.971 *et seq.*).
>
> 2. The [plaintiff] has the following severe impairments: diabetes mellitus, and left shoulder pain, and coronary artery disease (20 CFR 416.920(c)).
>
> 3. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) as found previously by ALJ Sheard.[1] The [ALJ] further finds that he is also limited to occasional overhead reaching and pushing and pulling due to his left shoulder impairment.
>
> 5. The [plaintiff] has no past relevant work (20 CFR 416.965).

---

[1] Plaintiff had a prior claim for benefits which was denied by ALJ Gilbert Sheard on January 7, 1998 (Tr. 72-80). ALJ Sheard found that plaintiff was capable of a reduced range of sedentary work and was "not disabled." *Id.* ALJ Smith noted that under *Drummond v. Comm'r of Soc. Sec.,* 126 F.3d 837 (6th Cir. 1997), the Commissioner is barred from re-litigating issues that have previously been determined at the administrative level. *Id.* at 842. *See also* 42 U.S.C. § 405(h) ("The findings and decision of the Commissioner of Social Security after a hearing shall be binding on all individuals who were parties to such hearing."). *Drummond* mandates that in the absence of evidence showing a claimant's condition has improved, findings issued by an ALJ as part of a prior disability determination are binding on an ALJ in a subsequent proceeding. 126 F.3d at 841 (citing 20 C.F.R. § 404.905).

> 6. The [plaintiff] was born [in] . . . 1966 and was 41 years old, which is defined as a younger individual age 18-44, on the date the application was filed (20 CFR 416.963).
>
> 7. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue because the [plaintiff] does not have past relevant work (20 CFR 416.968).
>
> 9. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).
>
> 6. The [plaintiff] has not been under a disability, as defined in the Social Security Act, since May 16, 2007, the date the application was filed and continuing through the date of this decision (20 CFR 416.920(g)).

(Tr. 17-23).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision. (Doc. 12 at 2-7; Doc. 13 at 2-4).

Plaintiff assigns four errors in this case: (1) the ALJ misinterpreted the evidence which led to an improper RFC; (2) the ALJ improperly weighed the medical opinions in the record; (3) the ALJ's credibility analysis is unsupported by the evidence; and (4) the ALJ's finding that a substantial number of jobs exist which plaintiff can perform is not supported by the evidence.

### 1. The ALJ's interpretation of the evidence and its effect on plaintiff's RFC

Plaintiff contends the ALJ misstated several facts in evidence which adversely impacted the RFC finding: (1) the ALJ misinterpreted the evidence of plaintiff's prison work; (2) the ALJ

5

incorrectly evaluated plaintiff's cardiac impairment when the evidence showed plaintiff's cardiac efficiency worsened over time; and (3) the ALJ incorrectly concluded that plaintiff's psychological impairment was a non-severe impairment. For the reasons that follow, the Court finds that the ALJ erred in assessing plaintiff's RFC and that this matter should be remanded for further proceedings.

First, plaintiff argues the ALJ incorrectly stated plaintiff worked in prison making license plates after his shoulder surgery and concluded that plaintiff performed work-like activity in prison in spite of his shoulder impairment. (Tr. 20, citing Tr. 207 and plaintiff's testimony). The medical record found at Tr. 207 reflects that plaintiff had a history of rotator cuff surgery and received treatment for chronic shoulder pain. It does not indicate plaintiff continued to work after his shoulder surgery. In addition, plaintiff testified that he did not continue the license plate work after his shoulder surgery contrary to the ALJ's statement. (Tr. 35). This is a factual error that should be corrected on remand and considered in assessing plaintiff's credibility and RFC.

Second, plaintiff argues the ALJ improperly evaluated his cardiac impairment by comparing his more recent 30% ejection fraction test, showing Listing level severity, to earlier findings that were not as severe (50-58% ejection fractions). (Tr. 19). Plaintiff contends the ALJ incorrectly assumed that the 30% ejection fraction was an anomaly and inconsistent with other record evidence when in fact it showed his cardiac condition was worsening over time. (Doc. 12 at 13).

The ALJ's discussion of plaintiff's 30% ejection fraction was in response to counsel's argument at the hearing that plaintiff's cardiac impairment met Section 4.02A(1) of the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing). (Tr. 19). The ALJ

6

reasonably concluded that the single ejection fraction finding of 30%, in light of plaintiff's other ejection fraction readings of 58% and 50 to 55%, which were within normal limits, was insufficient to meet the Listing "for the entire time." *Id.* Moreover, as the ALJ found, plaintiff failed to show or argue he met the other criteria of the Listing.[2] *Id.* The Court finds no error in this regard.

Plaintiff's reply brief clarifies that he is not arguing his cardiac condition meets the criteria of Listing 4.02, but rather that the ALJ's consideration of his cardiac impairment was improper because she failed to consider the fact that plaintiff's condition progressively worsened over time. Plaintiff is correct that the ALJ's decision does not discuss how plaintiff's heart impairment affected his RFC. In addition, and as explained more fully below, the state agency physician, upon whom the ALJ relied for the RFC finding, reviewed the record in 2007 based solely on plaintiff's left shoulder pain and foot pain (Tr. 222-229) and did not have records of plaintiff's cardiac impairment, which arose after the state agency doctor reviewed the record. As the Court cannot discern from the ALJ's decision what impact plaintiff's cardiac insufficiency had on his RFC, this matter should be remanded for a clarification of this issue.

Third, the ALJ's finding that plaintiff's psychological impairment was a non-severe impairment is not supported by substantial evidence. A severe impairment or combination of impairments is one which significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. §416.920(c). From a mental standpoint, basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to understand, carry out and remember simple instructions; use judgment; respond appropriately to supervisors and co-

---

[2]Section 4.02 of the Listing of Impairments governs chronic heart failure while on a regimen of prescribed treatment.

workers; and deal with changes in the routine work setting. 20 C.F.R. §416.921(b). Plaintiff is not required to establish total disability at this level of the sequential evaluation. Rather, the severe impairment requirement is a threshold element which plaintiff must prove in order to establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357 (6th Cir. 1984). An impairment will be considered nonsevere only if it is a "slight abnormality which has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985) (citing *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The severity requirement is a "*de minimis* hurdle" in the sequential evaluation process. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988).

The medical evidence shows that plaintiff visited the emergency room at University of Cincinnati Medical Center complaining of depression on two occasions in August 2009. (Tr. 236-240, 243-248). On the first visit to Psychiatric Emergency Services, he did not stay for an evaluation. (Tr. 243-248). On the second visit to Psychiatric Emergency Services on August 22, 2009, plaintiff complained of hypervigilance, paranoia, anxiety, sleep disturbance, flashbacks of trauma, and self-isolation. (Tr. 236-239). He reported that he began to experience these signs and symptoms after he witnessed one friend shoot and kill another good friend shortly after being released from prison in 2007. *Id.* The physician who evaluated plaintiff observed that he limped and had anxious mood and affect, evidence of thought blocking, paranoid thought content with a fear of being killed, and limited insight and judgment. (Tr. 239-240). Plaintiff was diagnosed with PTSD and Major Depressive Disorder with a GAF of 45, prescribed Celexa and Risperdal, and referred to Mental Health Access Point for counseling. (Tr. 235, 240).

8

Dr. Kate Anthony, Psy.D., examined plaintiff on October 21, 2009. (Tr. 392-394). Dr. Anthony noted that plaintiff had difficulty adjusting to being out of prison and experienced signs and symptoms of depression, hypervigilance, difficulty relaxing, impaired sleep, chronic pain, a sense of impending doom, and a sensation that the world is very dangerous. (Tr. 394). On mental status examination, Dr. Anthony found plaintiff's behavior was agitated, restless, and at times tearful; his attitude was guarded and it was difficult for him to cooperate well; his speech was quiet and he was minimally verbal; his stream of thought was fragmented and tangential, and he had difficulty finishing any sentences; his thought content included overvalued ideas, thought blocking, concrete thinking, and ideas of reference; he had a sense of impending doom; his affect was anxious and frightened; his memory was fair; and his mood was anxious, overwhelmed, and depressed. *Id.* Dr. Anthony diagnosed plaintiff with PTSD and Major Depressive Disorder, severe and recurrent. *Id.* She noted that plaintiff had been seen at the Psychiatric Emergency Services department at the University of Cincinnati Medical Center, was started on Risperdal and Celexa, and needed to have his medications maintained. *Id.* Dr. Anthony opined that plaintiff is markedly limited in maintaining attention and concentration for extended periods, working in coordination with or near others, and dealing with the public. (Tr. 392). Dr. Anthony also opined that plaintiff has moderate limitations in a number of other work-related mental functions. *Id.*

The ALJ determined there was "no medical evidence that the claimant has any severe psychological impairment." (Tr. 18). In support of this finding, the ALJ noted that plaintiff made no mention of psychological problems when examined by Dr. Fritzhand in July 2007 or when treated at the Winton Hills Medical Center in December 2007 and July 2008; emergency

9

department records in August 2009 indicated no previous history of depression; and despite the findings and assessment showing marked and moderate limitations from a psychologically based illness in October 2009, plaintiff "has a pending psychological appointment and his condition *could* improve within 12 months" and "[h]is depression *could* improve with treatment." (Tr. 18) (emphasis added).

Contrary to the ALJ's finding, the record evidence shows that as of August 2009, plaintiff's PTSD and depression were more than a "slight" abnormality that affected his ability to perform work-related functions from a mental standpoint. The physicians who examined plaintiff related his PTSD to witnessing the murder of a good friend in August 2007 (Tr. 236, 394), so the fact that plaintiff mentioned no psychological problems to Dr. Fritzhand one month earlier in July 2007 is of no consequence. In addition, plaintiff's failure to complain about psychological problems in 2007 and 2008 does not detract from the consistent 2009 evidence indicating severe mental impairments. "[A] claimant's failure to seek formal mental health treatment is 'hardly probative' of whether the claimant suffers from a mental impairment. . . ." *Boulis-Gasche v. Comm'r of Soc. Sec.,* 451 F. App'x 488, 493 (6th Cir. 2011) (citations omitted). *See White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 283 (6th Cir. 2009) ("For some mental disorders, the very failure to seek treatment is simply another symptom of the disorder itself.") (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 945 (8th Cir. 2009)). *See also Blankenship v. Bowen*, 874 F.2d 116, 1124 (6th Cir. 1989) (questioning the practice of censuring claimants with mental impairments for exercising poor judgment in not seeking treatment).

The gist of the ALJ's decision appears to be the ALJ's lay opinion that plaintiff "could" improve with the treatment he would be receiving. (Tr. 18). Yet, the converse is equally as

likely – that he could not improve – and given the evidence that plaintiff was prescribed psychiatric medications in August 2009 without any indication of improvement by his October 2009 appointment with Dr. Anthony, the ALJ's conclusion is without substantial support in the record. Indeed, Dr. Anthony's recommendation that plaintiff continue his medications and participate in mental health counseling strongly suggests that his mental impairments were projected to continue for a period of time. There is absolutely no medical evidence contradicting Dr. Anthony's findings, which are consistent with the Psychiatric Emergency Services findings from August 2009. Moreover, the ALJ's speculation that plaintiff may improve with treatment says nothing about the severity of his condition. In other words, improvement is a relative term and plaintiff's psychological conditions could improve and still limit his ability to perform work-related activities.[3] "Under the ALJ's logic, any improvement in one's mood, regardless of how small and from what level the individual improved, would defeat a claim of mental impairment. This cannot be so." *Boulis-Gasche*, 451 F. App'x at 494.

It is not preordained that, on remand, a fact-finder necessarily would conclude that the plaintiff's PTSD and depression neither lasted, nor were expected to last, for a continuous period of at least 12 months. *See* 20 C.F.R. § 416.909. The record as a whole indicates that plaintiff's PTSD and depression are more than "slight abnormalities" and that plaintiff met the "*de minimis* hurdle*"* in establishing that his mental impairments were severe. *Farris*, 773 F.2d at 90; *Higgs*, 880 F.2d at 862. Consequently, the ALJ's determination that plaintiff has no severe

---

[3]For example, Dr. Anthony opined that plaintiff had "marked" limitations in maintaining attention and concentration for extended periods, working in coordination with or near others, and dealing with the public. (Tr. 392). If with treatment plaintiff experienced only "moderate" limitations in concentration and social interactions, he would have "improved," but nevertheless would still have a severe impairment that needed to be accommodated in the RFC finding.

11

psychological impairments is not supported by substantial evidence. This error is not harmless as the ALJ failed to account for any restrictions on plaintiff's ability to function from a mental standpoint in formulating plaintiff's RFC. *Cf. Maziarz v. Sec. of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987) (where ALJ considers non-severe impairment in formulating RFC, failure to find impairment severe is harmless error). Accordingly, the undersigned recommends that plaintiff's first assignment of error be sustained.

### 2. The ALJ's weighing of the medical opinions

Plaintiff's second assignment of error asserts the ALJ erred in weighing the medical opinions of record and, as a result, the ALJ's conclusion about plaintiff's RFC is not supported by substantial evidence. Plaintiff contends this matter should be remanded for a re-evaluation of the medical opinions and reformulation of the RFC. (Doc. 12 at 18). The Court agrees.

As discussed above, the ALJ's severity finding on plaintiff's mental impairments is without substantial support in the record; therefore, the ALJ's RFC determination, which failed to account for any limitations from plaintiff's mental impairments, is likewise not supported by substantial evidence. In addition, the ALJ's decision to give "less weight" to the opinion of Dr. Anthony based on the absence of a "severe" mental impairment (Tr. 22) is similarly in error.

With respect to plaintiff's physical impairments, the ALJ gave plaintiff an RFC for sedentary work with limited use of his left arm. In making the RFC decision, the ALJ gave "significant weight" to the opinions of Dr. Klyop and Dr. Fritzhand. Dr. Fritzhand performed a consultative examination on July 19, 2007, and concluded that plaintiff "may have difficulty reaching overhead with the left extremity." (Tr. 22, citing Tr. 215). Dr. Klyop issued an RFC opinion on July 19, 2007, and adopted the sedentary RFC found by ALJ Sheard on plaintiff's

previous application for benefits. (Tr. 21, citing Tr. 223). The ALJ adopted the RFC opinion of Dr. Klyop and added left shoulder/arm restrictions based on Dr. Fritzhand's opinion.

However, as plaintiff points out, both Drs. Klyop and Fritzhand rendered their opinions in 2007 based on an incomplete medical record, before much of the objective and clinical evidence was submitted in this case. Most importantly, neither physician's opinion accounted for plaintiff's cardiac impairment, which reportedly began in June 2008 with dyspnea on exertion and episodic chest pains (Tr. 280) and progressively worsened with time. (Compare Tr. 280-283, 291-299 with Tr. 254-279). A cardiac catheterization in June 2009 revealed minor luminal coronary artery disease, but with global hypokinesis, bradycardia, left ventricular dysfunction, and a left ventricular ejection fraction of only 30%. (Tr. 255). EKG findings on June 24, 2009 were abnormal, confirming marked sinus bradycardia, left axis deviation, inferior infarct (age undetermined), anterior infarct (age undetermined), left anterior hemiblock, and poor R wave progression. (Tr. 275-276). These EKG findings were not significantly different from an EKG performed on December 29, 2008. (Tr. 276). While the Commissioner asserts the ALJ explained that the evidence of plaintiff's "heart condition[] did not warrant greater restrictions" than those reflected in the RFC (Doc. 13 at 8, citing Tr. 20-21), the ALJ's decision is actually silent on the impact of plaintiff's cardiac condition on his RFC.

The Court recognizes that an opinion from a non-examining source, such as a state agency's medical reviewing consultant, may "in appropriate circumstances" be given greater weight than that of an examining or treating source. Social Security Ruling 96-6p, 1996 WL 374180, at *3. However, where, as here, plaintiff developed additional severe impairments subsequent to the state agency reviewer's opinion and the ALJ nonetheless credits the state

13

agency reviewer's opinion, the ALJ must acknowledge that fact and provide sufficient reasons for doing so to enable the Court to engage in meaningful judicial review. *Cf. Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (where ALJ credits non-examining source opinion who was without opportunity to review subsequent reports and records of consulting and treating physicians, court requires "some indication that the ALJ at least considered these facts before giving greater weight to an opinion that is not 'based on a review of a complete case record.'") (citing *Fisk v. Astrue*, 253 F. App'x 580, 585 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *3)). The ALJ's failure to do so in this case mandates a reversal and remand for further proceedings. Therefore, plaintiff's second assignment of error should be sustained and this matter should be remanded for consideration of all of plaintiff's impairments in the RFC decision.[4]

### 3. The ALJ's credibility and vocational findings

The ALJ's credibility and vocational findings similarly suffer from the ALJ's failure to consider plaintiff's cardiac and mental impairments. The ALJ's decision does not reflect that she considered the impact of plaintiff's severe cardiac impairment on his testimony of chest pains and pain and fatigue on exertion, nor does it reflect consideration of plaintiff's mental impairments in the credibility assessment. *See* Tr. 20-21. In addition, in light of the Court's finding that the ALJ failed to properly consider plaintiff's cardiac and mental impairments in assessing plaintiff's RFC, the hypothetical questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations. Accordingly, the ALJ erred by relying on this

---

[4]To the extent the ALJ incorrectly concluded that Dr. Beatty, an examining physician, did not impose any significant exertional limitations (Tr. 22), when in fact Dr. Beatty opined that plaintiff was limited to no more than three hours of sitting per day (Tr. 391), this opinion evidence should be reconsidered on remand.

14

vocational testimony to carry her burden at Step 5 of the sequential evaluation process. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789 (6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply restated residual functional capacity which did not accurately portray claimant's impairments). Accordingly, the ALJ's credibility and vocational findings are not supported by substantial evidence.

### III. This matter should be reversed and remanded for further proceedings.

This matter should be reversed and remanded pursuant to Sentence Four of § 405(g) for further proceedings consistent with this Report and Recommendation. All essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of his alleged onset date. *Faucher v. Sec. of HHS*, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, reversal and remand are required for proper analysis of plaintiff's physical and mental impairments and continuation of the sequential evaluation process.

### IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 1/23/13

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD CHILDS,
    Plaintiff,

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:11-cv-817
Dlott, J.
Litkovitz, M.J.

NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).